UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| OVIDIU P. TUDORIU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 2:04 CV 294 |
| | ) |
| HORSESHOE CASINO HAMMOND, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM and ORDER

Defendant has moved to dismiss Counts I, III, and IV of plaintiff's amended complaint. (Docket # 25.) For the reasons set forth below, defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

Plaintiff, Ovidiu P. Tudoriu ("plaintiff"), a native of Romania, filed a complaint on July 27, 2004, alleging that defendant, Horseshoe Hammond, Inc. ("defendant") violated the Immigration Reform and Control Act of 1986 ("IRCA"). (Pl.'s Compl., docket # 1, ¶¶ 1, 3.) Plaintiff contends that defendant failed to hire him in the summer or fall of 2003 for the position of a casino floor supervisor on the basis of his citizenship status. (Pl.'s Compl. ¶ 2.) Though plaintiff was legally entitled to live and work in the United States, plaintiff had not yet received a green card, and claims this to be the basis for defendant's adverse hiring decision. (Pl.'s Compl. ¶ 1.)

On September 15, 2004, defendant filed a motion, pursuant to RULE 12(b)(1) of the FEDERAL RULES OF CIVIL PROCEDURE, to dismiss plaintiff's complaint for lack of subject matter jurisdiction. (Def.'s Mot. to Dismiss, docket # 11, at 1.) Shortly thereafter, on October 15, 2004, plaintiff moved to amend his complaint to add: (1) a second claim under IRCA, alleging that defendant failed to hire him because of his national origin; (2) a claim for national origin discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"); (3) a claim for alienage discrimination under 42 U.S.C. § 1981; and (4) an action for declaratory judgment with regard to plaintiff's IRCA claims. (*See generally* Pl.'s Mot. to Am. Compl., docket # 13; Pl.'s Am. Compl., docket # 19.)

On January 24, 2005, Magistrate Judge Rodovich granted plaintiff's motion to amend his complaint and allowed the date of the amended complaint to relate back to the filing date of his initial complaint. (Order, docket # 18.) Defendant objected to Magistrate Judge Rodovich's order, and asked this court to review the decision pursuant to FED. R. CIV. P. 72(a). (Objection, docket # 21.) On August 25, 2005, this court adopted Magistrate Judge Rodovich's order and denied defendant's objection. In doing so, this court also stated that defendant's RULE 12(b)(1) motion to dismiss still stood, and that defendant could supplement its motion in light of plaintiff's amended complaint. (Order, docket # 23.)

On September 9, 2005, defendant filed its answer and affirmative defenses to plaintiff's amended complaint, (Docket # 24), as well as its RULE 12(b)(1) motion to dismiss Counts I, III, and IV of plaintiff's amended complaint. (Def.'s Mot. to Dismiss

2

Am. Compl., docket # 25, ¶ 8.) Defendant's September 9, 2005, motion to dismiss incorporated by reference defendant's September 15, 2004, motion to dismiss. (Def.'s Mot. to Dismiss Am. Compl. ¶ 7.)

## II. STANDARD OF REVIEW

The purpose of RULE 12(b)(1) is to dismiss claims over which a federal court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). When considering a RULE 12(b)(1) motion for dismissal, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of plaintiff. *Johnson v. Apna Ghar, Inc.*, 330 F.3d 999, 1001 (7th Cir. 2003) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 549, 554 (7th Cir. 1999)). The court may properly look beyond the jurisdictional allegations of a complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists. *Johnson,* 330 F.3d at 1001; *Long,* 182 F.3d at 554 (quoting *Capitol Leasing Co. v. FDIC,* 999 F.2d 188, 191 (7th Cir. 1993)).

## III. ANALYSIS

Pursuant to RULE 12(b)(1) of the FEDERAL RULES OF CIVIL PROCEDURE, defendant asks the court to dismiss Counts I, III, and IV of plaintiff's amended complaint. (Def.'s Mot. to Dismiss Am. Compl. 3.) Defendant contends that the court does not have subject matter jurisdiction over plaintiff's IRCA claims, and that the Seventh Circuit does not recognize a cause of action for alienage discrimination under 42 U.S.C. § 1981. (Def.'s Mot. to Dismiss Am. Compl. 2.) Plaintiff has not filed a response to defendant's motion.

*A. Count I: IRCA Claims*[1]

Plaintiff first alleges that defendant violated IRCA, 8 U.S.C. § 1324b, by discriminating against him upon the bases of his citizenship status and his national origin when defendant failed to hire plaintiff for the position of casino floor supervisor. (Pl.'s Am. Compl. ¶ 18.) Defendant points out, however, that neither plaintiff's initial complaint nor his amended complaint evidences that plaintiff filed any prerequisite administrative claims with the United States Department of Justice ("DOJ") for the alleged violations of IRCA or that plaintiff is now seeking enforcement of any administrative orders from the DOJ. (Def.'s Mem. Supp. Mot. to Dismiss Am. Compl., docket # 25, at 3.)

IRCA prohibits employment discrimination based upon both citizenship status, a proscription not encompassed by other anti-discrimination statutes, and national origin, as an extension of the goals found in Title VII. 8 U.S.C. § 1324b; *Gen. Dynamics Corp. v. United States*, 49 F.3d 1384, 1385 (9th Cir. 1995). IRCA's provisions provide an extensive administrative enforcement mechanism for bringing employment discrimination claims under the statute. 8 U.S.C. § 1324b(b)-(j); *see Gen. Dynamics*, 49 F.3d at 1385. However, IRCA does not provide for private causes of action in federal court, and implicates judicial review only after administrative procedures have been exhausted. *See Gen.*

---

[1] The court only evaluates Count I of plaintiff's amended complaint with respect to plaintiff's IRCA claims. Defendant does not ask the court to dismiss plaintiff's citizenship and/or national origin discrimination claims "under other relevant federal and state statues and administrative regulations," and thus the court does not address them here. (Pl.'s Am. Compl. ¶ 18.)

*Dynamics,* 49 F.3d at 1385; *Shah v. Wilco Sys., Inc.*, 126 F. Supp. 2d 641, 648-49 (S.D.N.Y. 2000); *League of United Latin Am. Citizens v. Pasadena Indep. Sch. Dist.*, 662 F. Supp. 443, 446 (S.D. Tex. 1987). In order to bring charges of employment discrimination, IRCA first requires a claimant to file a charge with the Office of Special Counsel for Immigration-Related Unfair Employment Practices ("OSC"). 8 U.S.C. § 1324b; *see Gen. Dynamics*, 49 F.3d at 1385. After an initial investigation by the OSC, a complaint may be filed with an ALJ either by the OSC or the complainant. 8 U.S.C. § 1324b(b)-(d). After a hearing before an ALJ, the ALJ may either issue an order dismissing the complaint or impose appropriate remedies. 8 U.S.C. § 1324b(e)-(h).

The purpose of IRCA's extensive administrative enforcement mechanism is to prevent premature interference with agency procedures, and to afford the courts with the benefit of the agency's expertise and administrative record. *League,* 662 F. Supp. at 446 (citing *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)). Hence, the role of the district courts in IRCA proceedings is limited to two functions. First, the district courts may order compliance with a subpoena lawfully issued by an ALJ, and punish contempt of such an order. 8 U.S.C. § 1324b(f)(2). Second, the district courts may enforce an order of an ALJ, after the OSC petitions for such enforcement. 8 U.S.C. § 1324b(j)(1). In the instant case, however, plaintiff does not request either of the aforementioned avenues of judicial involvement. Furthermore, plaintiff does not establish that he exhausted his administrative remedies; rather plaintiff states that he only contacted the OSC once by phone and did not file any claims with the OSC, as required under IRCA. (Pl.'s Am.

Compl. ¶ 15.) Thus, because the court does not have subject matter jurisdiction over these IRCA claims, the court dismisses both plaintiff's IRCA claims alleging discrimination on the bases of citizenship status and national origin.[2]

   B. *Count III: Alienage Discrimination Claim Under 42 U.S.C. § 1981*

Plaintiff also purports that defendant's failure to hire plaintiff constituted alienage[3] discrimination in violation of 42 U.S.C. § 1981. (Pl.'s Am. Compl. ¶ 22.) In response, defendant contends that only race discrimination, and not alienage discrimination, gives rise to a viable claim under § 1981. (Def.'s Mem. Supp. Mot. to

---

[2] Defendant also argues that plaintiff's national origin claim under IRCA is preempted by Title VII. (Def.'s Mem. Supp. Mot. to Dismiss Am. Compl. 5.) IRCA supplements Title VII by extending the prohibition against national origin discrimination to employers with more than three employees, 8 U.S.C. § 1324b(a)(2), while Title VII, in comparison, only grants the Equal Employment Opportunity Commission ("EEOC") jurisdiction over claims against employers with fifteen or more employees. 42 U.S.C. 2000e(b). However, even where the facts would support charges for national origin discrimination under both IRCA and Title VII, overlapping jurisdiction is not allowed. 8 U.S.C. § 1324b(b)(2). Therefore, because plaintiff previously filed a charge under Title VII based upon the same set of facts under which plaintiff now alleges his IRCA claim for national origin discrimination, (Pl.'s Am. Compl. 1-5, Exs. D-3, D-4, D-5.), plaintiff's Title VII claim would preempt plaintiff's IRCA claim. *See* 8 U.S.C. § 1324b(b)(2). Even so, this preemption discussion is purely academic because plaintiff failed to comply with the prerequisite administrative procedures required under IRCA, a deficiency that forms the basis of the court's dismissal of plaintiff's IRCA claims in this order.

[3] The court only interprets plaintiff's § 1981 claim to be based upon alienage discrimination, and not upon national origin discrimination. Plaintiff contends that defendant failed to hire plaintiff because plaintiff did not yet have a green card. (Pl.'s Am. Compl. ¶ 18.) Plaintiff does not contend that defendant failed to hire him in violation of § 1981 because he is foreign born. Moreover, § 1981 does not protect against discrimination on the basis of national origin. *See Von Zuckerstein v. Argonne Nat. Lab.*, 984 F.2d 1467, 1472 (7th Cir. 1993); *Anooya v. Hilton Hotels Corp.*, 733 F.2d 48, 50 (7th Cir. 1984). Thus, for these reasons, the court will not address any issues relevant to national origin claims under § 1981.

6

Dismiss Am. Compl. 6.) However, because the Seventh Circuit, in addition to a number of other circuit courts, interpret § 1981 as prohibiting discrimination on the basis of race *or* alienage, the court denies defendant's motion to dismiss plaintiff's alienage discrimination claim under § 1981.

> Section 1981 provides:
>
> All persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Seventh Circuit precedent suggests that alienage discrimination does indeed provide a viable claim under § 1981. *See St. Louis v. Alverno College*, 744 F.2d 1314, 1317 (7th Cir. 1984); *Bell v. City of Milwaukee,* 746 F.2d 1205, 1259 (7th Cir. 1984). In *St. Louis,* the Seventh Circuit held that the district court properly dismissed a teacher's claim of sex discrimination under Title VII because "the section applies only to alleged discrimination on the basis of race *or* alienage." 744 F.2d at 1317 (emphasis added). Likewise, in *Bell*, the Seventh Circuit stated that § 1981 "is expressly limited to discrimination based on race *or* alienage." 746 F.2d at 1259 (emphasis added). While arguably dicta, these statements seem to be in line with several Supreme Court cases that have established that aliens are "persons" within the meaning of the statute. *See Graham v. Richardson,* 403 U.S. 365, 377 (1971); *Torao Takahashi v. Fish and Game Comm'n,* 334 U.S. 410, 419-20 (1948); *Yick Wo v. Hopkins,* 118 U.S. 356, 369 (1886).

Further, other circuit courts have explicitly held that § 1981 prohibits discrimination against non-citizens, like plaintiff in the instant case. The Second Circuit, for example, explained that "[t]he statute's juxtaposition of '[a]ll' and 'white' suggests that it prohibits race discrimination . . . while its juxtaposition of 'persons' and 'citizens' suggests that it prohibits alienage discrimination." *Anderson v. Conboy,* 156 F.3d 167, 171 (2d Cir. 1998) (holding that former union representative properly brought action under § 1981 alleging unfair termination because he was not a United States citizen)**.** Citing *Anderson* with approval, the Ninth Circuit further reasoned that the statute's use of "the word 'citizen' attests that a person cannot face disadvantage in the activities protected by § 1981 solely because of his or her alien status." *Sagana v. Tenorio,* 384 F.3d 731, 738 (9th Cir. 2004). Likewise, both the Fourth and Fifth Circuits have also confirmed their recognition of alienage discrimination under § 1981. *See Duane v. Geico*, 37 F.3d 1036, 1043 (4th Cir. 1994); *Bhandari v. First Nat. Bank of Commerce*, 829 F.2d 1343, 1351-52 (5th Cir. 1987).

In the face of these explicit holdings by several circuit courts, and the implicit findings by the Seventh Circuit and the Supreme Court, defendant still argues that alienage discrimination is not a viable claim under § 1981. Defendant relies on *Thomas v. Rohner-Gehrig and Company, Inc.*, a 1985 district court case from the Northern District of Illinois stating that a claim of private, non-racial alienage discrimination alone is not within the limited range of violations for which § 1981 affords relief. No. 83 C 5645, 1985 WL 2019, at *3 ( N.D. Ill. July 1, 1985). However, what defendant fails to acknowledge is

8

that in 1991, the legislature amended § 1981, and extended the statute's protections against governmental discrimination to prohibit discrimination by private actors, like defendant in the instant case. This amendment abrogated half of *Thomas*'s holding—the part where the court stated that private discrimination is not covered by § 1981. This court cannot now predict how the *Thomas* court would have decided the case post-1991. Accordingly, even if *Thomas* were binding on this court, it is not as reliable or persuasive as the more recent circuit court decisions that have taken the 1991 amendment into consideration. *See, e.g., Anderson*, 156 F.3d at 178 (holding, as matter of first impression, that § 1981 proscribes private alienage discrimination with respect to right to make and enforce contracts); *Sagana,* 384 F.3d at 731. Therefore, because precedent of numerous circuit courts, including the Seventh Circuit, suggests that private alienage discrimination gives rise to a viable claim under § 1981, the court denies defendant's request to dismiss plaintiff's alienage discrimination claim.

    *C. Count IV: Request for Declaratory Judgment*

In plaintiff's amended complaint, plaintiff also asks the court for:

> [A] declaratory judgment to determine the rights and duties between the parties and to settle issue of law concerning whether or not Tudoriu has satisfied . . . administrative duties under the doctrines of 'substantial compliance' . . . and if this Court does not have any jurisdiction to hear an IRCA claim, whether the time frame for him to file has been tolled by attempting to file under IRCA and by his filing with the EEOC and proceeding with this action.

(Pl.'s Am. Compl. ¶ 25.) In response, defendant contends that plaintiff can only bring a valid cause of action for declaratory judgment when there is a case of actual controversy

within the court's jurisdiction, and that in this case there is no such controversy. (Def.'s Mot. to Dismiss Am. Compl. 8.)

The court's authority to decide an action seeking declaratory judgment arises under the Declaratory Judgment Act, 28 U.S.C. § 2201. Declaratory relief is appropriate when a declaratory judgment will serve a useful purpose in clarifying and settling the legal relations at issue, and terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. *See Cunningham Bros., Inc. v. Bail,* 407 F.2d 1165, 1168 (7th Cir. 1969) (alleged tort-feasor was not entitled to bring declaratory judgment to determine its right to be indemnified); *Cont'l Assurance Co. v. Macleod-Stedman, Inc.*, 694 F. Supp. 449, 466 (N.D. Ill. 1988) (case or controversy requirement met where parties sought determination of fairness of proposed settlement). The decision of the district court to grant declaratory relief is discretionary, and the court ought not grant declaratory relief where the controversy is not of sufficient immediacy and reality, admitting specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts. *Aetna Life v. Haworth,* 300 U.S. 227, 241 (1937) (Article III of the Constitution prohibits federal courts from issuing advisory opinions); *Deveraux v. City of Chi.*, 14 F.3d 328, 331 (7th Cir. 1994) (officers failed to allege case or controversy to warrant declaratory judgment that further use of existing rosters in promoting officers would not violate Civil Rights Act of 1990); *NUCOR Corp. v. Aceros Y Maquilas de Occidente,* 28 F.3d 572, 577 (7th Cir. 1994).

In the instant case, the court has already determined the rights and duties of the parties with respect to plaintiff's IRCA claims, as stated above, and thus a declaratory judgment on the issue is unnecessary. Moreover, to the extent that plaintiff requests that the court state whether the time limit applicable for filing an IRCA complaint should be tolled, any such "judgment" by the court would merely be advisory in nature, and therefore prohibited by Article III. *See Aetna,* 300 U.S. at 241; *Deveraux*, 14 F.3d at 331. Accordingly, the court grants defendant's request to dismiss Count IV of plaintiff's amended complaint.

## IV. CONCLUSION

For the foregoing reasons, defendant's September 9, 2005, motion to dismiss (docket # 25) is **GRANTED** in part and **DENIED** in part**.** Specifically, the court dismisses Count I of plaintiff's amended complaint, solely with respect to plaintiff's IRCA claims, and Count IV in its entirety. Defendant's September 15, 2004, motion to dismiss (docket # 11) is **DENIED** as moot, as it was incorporated by reference into the aforementioned motion.

                                                **SO ORDERED.**

**ENTER:** March 21, 2006

                                        s/James T. Moody  
                                        JUDGE JAMES T. MOODY  
                                        UNITED STATES DISTRICT COURT